**GANN v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

**SAGER v. SAME.**

**Nos. 4687–4689.**

Circuit Court of Appeals, Seventh Circuit.

June 30, 1932.

Rehearing Denied Oct. 27, 1932.

Frederick Secord and Morris Townley, both of Chicago, Ill., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Arthur Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), and Dwight H. Green, of Chicago, Ill., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The issue presented for our consideration is one of law. The question, concretely stated, is whether the gain of $233,827.54 in 1923, in addition to the $200,000 cash received as a result of the reorganization, may now be treated as taxable gain for 1925 and 1926 as a result of the liquidation.

The answer to this query involves two questions of law: (1) Whether, under section 202 (e) of the Revenue Act of 1921, as amended by the Act of March 4, 1923, § 2 (42 Stat. 1560), an exchange upon a statutory corporate reorganization of shares of stock for shares of stock and money resulted in a closed transaction, so that gain realized upon such exchange, other than the money received, could not be taxed upon a subsequent sale or disposition of the shares of stock received. (2) Whether the phrase "gain * * * recognized upon such exchange," in section 204 (a) (6) of the Revenue Acts of 1924 and 1926, 26 USCA § 935 (a) (6), is confined to gain included in taxable income, or whether it comprehends also gain in fact accrued but not realized by the taxpayer.

The order of the Board in effect answered the first question in the negative, and as to the second question held that the word "gain" in the phrase referred to is confined to gain included in taxable income. Petitioner, on the other hand, contends that each ruling of the board is erroneous.

As explanatory of the term "closed transaction" referred to in the first question, and as bearing upon its use and interpretation, petitioner in his brief has given a very simple and clear illustration, which in substance we set forth as follows: If a man buys a horse in 1930 for $100, and sells him in 1931 for $200, it is quite clear that he has made a profit of $100 in 1931; but if he buys a horse in 1930 for $100 and in 1931 trades him for a second horse, the question is not so clear; and if in 1932 he sells the second horse for $200, there arises a question wheth-

er his profit was realized in 1931 or 1932. With relation to such transactions two rules have been adopted. By the first rule the exchange is declared to result immediately in a taxable profit or loss, determined by the difference between the cost of the property given in exchange and the value of the property received in exchange. The exchange is said to close the transaction for tax purposes, and hence the rule applied is called the "closed rule." By the second or "open" rule the exchange is declared to result in no taxable profit or loss, but the owner is assumed to have acquired the property received in exchange at the original cost of the property given in exchange, and when the property received in exchange is subsequently sold, the profit or loss is computed on the basis of that assumption. In other words, the transaction is kept open, leaving the taxable profit or loss for determination at the time of the sale or other disposition of the property.

Wherever the open rule is applied to exchanges, it is obviously necessary that a formula be supplied whereby the cost of the property received in exchange may be determined.

Prior to 1918 it seems that Congress, for the purpose of taxation, had considered all exchanges as closed transactions. This was likewise true of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1060, § 202, except as to stock received for stock in certain corporate reorganizations, and as to that a statutory formula was provided to determine the cost basis of the property received in exchange.

The Revenue Act of 1921, c. 136, 42 Stat. 227, 229, § 202, (c), (d), and (e), provided for a number of exceptions to the general rule that exchanges should be regarded as closed transactions, and in connection with each exception provided a cost basis for the property received in exchange.

Section 202 (e) of the last-named act contained a cost basis, but was amended March 4, 1923, 42 Stat. 1560, for the purposes of taxation, by eliminating the cost basis and inserting an additional provision for computing the resulting gain. Upon this amendment petitioner's first contention is based, and we set forth the amended section in the margin,[1] with the omitted parts of the original

[1] "(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and re-

section inclosed in brackets and the new part indicated by italics.

By virtue of that enactment petitioner contends that his gain in 1923, other than cash received, was deliberately left untaxed and was not taxable in subsequent years, and he bases this contention on the fact that the amended section contains no basis from which the cost of the stock received in exchange can be determined. We think that petitioner's contention in this respect is untenable, because such cost basis is provided in section 202 (d) (1)[2] of said Revenue Act of 1921, and Congress seems to have held the same opinion when it enacted the amendment of 1923, as shown by the report of the Senate Committee on Finance, S. R. No. 1113, 67th Congress, 4th Session, p. 3, a part of which is set forth in the margin.[3]

The ruling of the Board that the facts herein stated did not constitute a closed transaction is entirely consistent with Regulations 62 of the Treasury Department, art. 1568, as amended January 1, 1923.[4] That interpre-

tation has been followed consistently by the Board, and its interpretation should not be overruled except for weighty reasons. Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; United States v. Cerecedo Hermanos Y Compania, 209 U. S. 337, 28 S. Ct. 532, 52 L. Ed. 821.

Section 204 (a) (6) of the Revenue Act of 1924, c. 234, 43 Stat. 258, is the same as the section of the same number of the Revenue Act of 1926, c. 27, 44 Stat. 14, 15, 26 USCA § 935 (a) (6). So much thereof as is pertinent to the second question presented is set forth in the margin.[5]

The only controversy raised by this question arises over the meaning of the word "recognized" in the sentence "the basis shall be * * * increased in the amount of gain * * * to the taxpayer that was recognized upon such exchange under the law * * *." Petitioner contends that the words "gain * * * recognized" mean all gain realized by him at the time of the exchange, whether taxed or not. According to his calculation in arriving at the amount of profit accruing to him at the time of liquidation, he starts with the cost to him of the West Virginia stock, $200,000; from this he deducts the amount of cash received, $200,-000, which leaves nothing; he then adds the total amount of gain which he claims to have actually realized at the time of the exchange, $433,827.54, and he claims that this amount

---

duce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, *the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of the money and the fair market value of such other property received in exchange* [the money or the fair market value of such other property received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess]."

[2] Section 202 (d) (1). "Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e);"

[3] S. R. No. 1113, 67th Congress, 4th Session, p. 3. "The reason for this [the taxation of the gain only to the extent of the cash received] is that the profit, so far as it is contained in the new stock received, has not yet been realized, and therefore should not be taxed until the new stock is sold or in some way disposed of so that the profit will be actually realized.

"It should be observed that any amount of the 'boot' which is not taxed as gain under the subdivision as amended by the bill would be applied against and reduce the basis for ascertaining the gain or loss in case of a future sale of the stock received in exchange. The law in subdivision (d) of section 202 already provides that where in case of exchange no gain or loss is recognized, the property received in exchange shall take the place of the old."

[4] Treasury Regulations 62, art. 1568. "Exchanges of property for other property and money.—Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily real-

izable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis described in articles 1561, 1562, and 1563 of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (a), (b), and (c) of article 1566 as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the amount of the gain resulting from such exchange shall be computed in accordance with article 1565, but in no case shall the taxable gain resulting from such exchange exceed the amount of the money and the fair market value of such other property received in exchange. The amount of the money and the fair market value of such other property received in exchange which is in excess of the taxable gain under the above should be applied against and reduce the basis for ascertaining the gain or loss from the subsequent sale of the property specified in paragraphs (a), (b), and (c) of article 1566 as received in exchange."

[5] Section 204 (a) (6), 43 Stat. 258 and 44 Stat. 14, 15, 26 USCA § 935 (a) (6): "If the property was acquired upon an exchange described in subdivision (b), (d), (e), or (f) of section 934, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain * * * to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made."

should be deducted from the total amount received for his stock, $545,238, which would leave $111,410.46 as his profit upon liquidation, as stated in his 1926 income tax return.

We are not in accord with petitioner's contention in this respect. The statute is clear, and we have no doubt that the words "gain * * * recognized upon such exchange under the law" mean gains taxable at that time under the law. At the time of the exchange the law did not even recognize a gain, except as to the cash received; and the fact that, in exchanges of stocks, accuracy of gains and losses cannot be determined or recognized as such until disposition of the stock received in exchange, is the very thing that prompted the remedial legislation now under discussion. If petitioner recognized a gain at the time of the exchange other than the cash which he received, it was merely a paper gain, and was anticipatory rather than realized. What he thought, however, or prophesied, or recognized in his mind is not material. The question here is: Did the law recognize the gain, other than the cash received? We are convinced that it did not, and the order of the board is affirmed.

Cases No. 4688, Georgia T. Gann v. Commissioner of Internal Revenue, and No. 4689, C. W. Sager v. Commissioner of Internal Revenue, are hereby affirmed without opinion, on the authority of No. 4687, David B. Gann v. Commissioner of Internal Revenue.